Slip-Op. 07-157

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                        :
HEARTLAND BY-PRODUCTS, INC.,            :
                                        :
            Plaintiff,                  :
                                        :     Before: Judith M. Barzilay, Judge
      v.                                :     Court No. 03-00307
                                        :
UNITED STATES,                          :
                                        :
            Defendant.                  :
                                        :
_____   :
```

OPINION

[Plaintiff's motion for summary judgment is granted.]

*Serko Simon Gluck & Kane LLP*, *Daniel J. Gluck* and (*Jerome L. Hanifin*); *DLA Piper Rudnick Gray Cary*, (*Stanley McDermott*) and *Sarah J. Storken* for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office; (*Aimee Lee*), Commercial Litigation Branch, Civil Division, United States Department of Justice; *Karen P. Binder* and *Yelena Slepak*, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of counsel, for Defendant United States.

Dated: October 30, 2007

      **BARZILAY, Judge:**  This case returns to the court on remand from the Federal Circuit, and presents a unique opportunity to clarify the scope of the Court's authority with respect to judgments issued pursuant to 28 U.S.C. § 1581(h).  This opinion is the court's fourth opinion detailing Plaintiff's troubled dealings with U.S. Customs and Border Protection[1]  ("Customs")

---

      [1] Prior to the passage of the Homeland Security Act of 2002 on March 1, 2003, Customs was denominated United States Customs Service and fell under the jurisdiction of the United States Treasury Department.  Pursuant to the Act, however, Customs was divided and renamed

beginning in 1995 when it sought an advanced ruling regarding its plan to import sugar syrup

from Canada for further refining and ultimate sale to its U.S. customers.[2]  Plaintiff Heartland By-

Products, Inc. ("Heartland"), has moved for summary judgment to challenge Customs' authority

to liquidate the subject entries at the Tariff Rate Quota ("TRQ") rate[3] following the reversal of

this court's favorable pre-importation judgment under § 1581(h).  *See Heartland II*, 264 F.3d at

1126.  For the reasons discussed herein, Heartland's motion for summary judgment is granted.

## I. Background

Heartland had plans to operate a plant that refined sugar syrup imported from Canada for

sale to its U.S. customers.  Before entry of the sugar syrup at issue in this case, Heartland sought

an advance ruling from Customs regarding the classification of its prospective imports.  *See* 19

C.F.R. § 177.  On May 15, 1995, Customs issued *New York Ruling Letter 810328* ("*New York

Ruling Letter*"), which classified the subject entries under subheading 1702.90.40 of the HTSUS,

one of the subheadings eligible for non-TRQ treatment.  *See Heartland I*, 23 CIT at 760, 74 F.

Supp. 2d at 1332.  Having obtained a favorable ruling, Heartland began importation and refining

operations in 1997.

---

United States Customs and Border Protection and United States Immigration and Customs
Enforcement.  Customs is now a part of the United States Department of Homeland Security.

[2] For additional background information, see *Heartland By-Prods., Inc. v. United States*,
23 CIT 754, 74 F. Supp. 2d 1324 (1999) ("*Heartland I*"); *Heartland By-Prods., Inc. v. United
States*, 264 F.3d 1126 (Fed. Cir. 2001) ("*Heartland II*"); *Heartland By-Prods., Inc. v. United
States*, 26 CIT 268, 223 F. Supp. 2d 1317 (2002) ("*Heartland III*"); *Heartland By-Prods., Inc. v.
United States*, 28 CIT __, 341 F. Supp. 2d 1284 (2004) ("*Heartland IV*"); and *Heartland By-
Prods., Inc. v. United States*, 424 F.3d 1244 (Fed. Cir. 2005) ("*Heartland V*").

[3] The non-TRQ duty during the relevant period was 0.35 cents per liter compared to the
higher TRQ rate of 35.74 cents per kilogram.  *See Heartland V*, 424 F.3d at 1246 n.2.

In response to a petition filed by domestic trade associations pursuant to 19 U.S.C.

§§ 1516 and 1625 seeking reclassification of Heartland's entries, Customs published a notice of

proposed revocation of the *New York Ruling Letter*. *See Proposed Revocation of Ruling Letter*

*& Treatment Relating to Tariff Classification of Certain Sugar Syrups*, 33 Cust. Bull. No. 22/23,

at 56-57 (June 9, 1999). On September 8, 1999, Customs issued a final notice that revoked the

*New York Ruling Letter* and reclassified Heartland's sugar syrup imports under 1702.90.10/20 of

the HTSUS to which the TRQ rate applied, effective November 8, 1999.[4]  *See Revocation of*

*Ruling Letter & Treatment Relating to Tariff Classification of Certain Sugar Syrups*, 33 Cust.

Bull. No. 35/36, at 41 (Sept. 8, 1999) ("*Revocation Ruling*").

On September 20, 1999, Heartland filed a complaint in this court seeking pre-importation

review of the *Revocation Ruling* pursuant to § 1581(h).[5]  *See Heartland I*, 23 CIT at 754, 74 F.2d

at 1326; *see* discussion *infra* Part A (quoting text of § 1581(h)). One month later, this court

granted Heartland's motion for judgment on the agency record. *See id.* at 777, 74 F. Supp. 2d at

1345. The court declared Custom's *Revocation Ruling* unlawful, and concluded that Heartland's

sugar syrup was properly classified under subheading 1702.90.40 of the HTSUS, as established

by the *New York Ruling Letter*. *See id.* at 760, 74 F. Supp. 2d at 1331-32. Customs appealed

this court's ruling but did not request a stay of its judgment. *See* USCIT R. 62(d) & (e).

---

[4] The revocation of the *New York Ruling Letter* would have taken effect on November 8, 1999 because 19 U.S.C. § 1625(c) provides 60 days for importers to modify their practices following an interpretive ruling. *See* § 1625(c).

[5] As Heartland petitioned this court for review well before November 8, 1999, the *Revocation Ruling* never took effect. It was essentially suspended during the pre-importation proceeding before this court.

Relying on *Heartland I*, Heartland continued to import sugar syrup into the United States.  On August 30, 2001, after the Supreme Court had decided *United States v. Mead Corp.*, 533 U.S. 218 (2001), the Federal Circuit reversed *Heartland I* on the grounds that Customs, while ineligible to receive *Chevron* deference, was entitled to deference under *Skidmore* concerning its classification of sugar syrup.  *See Heartland II*, 264 F.3d at 1133; *see also Mead Corp.*, 533 U.S. at 235; *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  Heartland stopped importing sugar syrup the following day.  After denying Heartland's petition for rehearing, the Federal Circuit issued its mandate on December 4, 2001.  "Customs, however, did not wait for the mandate to issue before commencing full-scale liquidation and reliquidation of Heartland's sugar syrup entries at the TRQ rates.  Beginning on October 5, 2001, Customs liquidated some 1,225 entries prior to the issuance of the mandate."  *Heartland V*, 424 F.3d at 1247.  Shortly thereafter, Customs liquidated or reliquidated an additional 3,874 entries made prior to *Heartland II* at the TRQ rate.  On the basis of *Heartland II*, Plaintiff then moved for entry of judgment, requesting this court to determine the effective date of the *Heartland I* ruling and the propriety of Customs' actions.

> [The Court] heard oral argument on Heartland's motion for entry of judgment on January 23, 2002.  At oral argument, counsel for the government represented that Heartland may establish jurisdiction under 28 U.S.C. § 1581(a) by protesting the liquidation or reliquidation of a single entry and that Customs "would likely" suspend action on Heartland's other entries pending court proceedings.  In view of this representation, the trial court advised the parties to work together to settle the jurisdictional issue. . . .  On February 15, 2002, two days after Heartland questioned the necessity of denying three rather than just one entry, Customs resumed liquidating and reliquidating Heartland's entries at the TRQ rate.

*Heartland V,* 424 F.3d at 1247-48 (footnote omitted).

On February 26, 2002, the court denied Heartland's motion for entry of judgment,

explaining that

> "[w]hile the jurisdictional predicate for 1581(h) requires that the entries be
> prospective, this must be distinguished from the effect of a judicial decision
> which can only be useful if it is applied to real entries." The court thus ruled that
> it continued to have jurisdiction to adjudicate issues pertaining to the actual
> entries covered by *Heartland I*: "To force an importer to seek relief under
> 1581(h) to establish its rights, and then force it to litigate again when it seeks to
> enforce those rights with actual entries, would make 1581(h) superfluous as an
> avenue of relief." The . . . court also observed that because its decision in
> *Heartland I* remained binding and enforceable until the issuance of the appellate
> mandate, "[a]ny action by Customs that applies the [*Revocation Ruling*] prior to
> the issuance of the mandate directly flouts the authority of this court over rulings
> under 1581(h)."
>
> Nonetheless, the [court] declined to exercise its jurisdiction under
> § 1581(h) to determine the temporal effect of its ruling in *Heartland I*, stating that
> a "better alternative" was available to Heartland in this case, namely, jurisdiction
> under 28 U.S.C. § 1581(a). The court reasoned that while it had "the option of
> ruling on the applicability of § 1625(c) to some of the entries covered by
> [Heartland's] motion"— specifically, those entered and liquidated prior to
> December 11, 2001— it would be unable to consider all of the relief requested by
> Heartland, given the unclear factual record and the uncertain status of other
> entries in the liquidation process. The protest process, the court explained, would
> allow the development of a clear factual record. Hence, the court concluded that
> "[i]n this case, to maintain jurisdiction under § 1581(h), or extend it under
> § 1581(i), when another more comprehensive avenue is available is unwise."
> The [court] thus entered judgment in accordance with the appellate mandate and
> dismissed the complaint.

*Heartland V*, 424 F.3d at 1248 (quoting *Heartland III*, 26 CIT at 280-81, 285, 223 F. Supp. 2d at
1330-31, 1334-35) (citations omitted).

Heartland did not appeal the court's dismissal of its complaint, but attempted to work

with Customs to effect what had been suggested at oral argument with regard to arranging denied

protests which would bring the issue back before the Court pursuant to § 1581(a). Unfortunately

for both parties, as it eventually became clear, these arrangements could not be consummated.[6]

    Heartland then sought relief from this court once again,

> challenging Customs' retroactive imposition of TRQ duties on Heartland's sugar
> syrup entries imported in reliance on *Heartland I*. Both counts of the complaint,
> the first styled under § 1581(h) and the second under § 1625(c), sought
> declaratory judgment as well as a preliminary and permanent injunction. On July
> 28, 2003, the government moved to dismiss Heartland's complaint for lack of
> subject matter jurisdiction or, in the alternative, for failure to state a claim upon
> which relief can be granted.

*Id.* at 1248-49.

    This court then, in a decision that was reversed,

> concluded that it could no longer exercise jurisdiction because it "formally
> relinquished jurisdiction" under [§ 1581(h)] when it denied Heartland's motion
> for entry of judgment and dismissed the original case in *Heartland III*. The
> present action, the [court] reasoned, "[w]hile involving the same parties, entries
> and underlying dispute as *Heartland III* . . . is an entirely separate, new cause of
> action. Therefore, Heartland carries the burden of reestablishing the jurisdiction
> of this court to survive the government's motion to dismiss." The [court] next
> determined that no new basis for § 1581(h) jurisdiction existed. The [court]
> found that Heartland could not satisfy the requirements of § 1581(h) anew, as all
> of its entries had already been imported, and no prospective entries were in
> dispute.

*Id.* at 1249 (quoting *Heartland IV*, 28 CIT at __, 341 F. Supp. 2d at 1287) (citations omitted). In

reversing this court's ruling, the Court of Appeals explained its reasoning as follows:

> The Court of International Trade concluded that because it formally relinquished
> jurisdiction over the original action in *Heartland III*, jurisdiction under § 1581(h)
> was no longer available. Indeed, in *Heartland III*, the trial court declined to
> exercise jurisdiction under § 1581(h) despite correctly finding such jurisdiction
> did lie. Mindful of the fact that *Heartland IV*, not *Heartland III*, is before us on
> review, we nonetheless note that the Court of International Trade did not have the
> authority to simply decline to exercise jurisdiction conferred by § 1581(h). . . .

---

[6] The record reflects letters exchanged between Heartland and Customs, but no
agreement on procedure.

> Having assured itself of § 1581(h) jurisdiction over at least some of the entries,
> the trial court should have deferred ruling on the government's motion to dismiss
> pending clarification of the factual record as to other entries or dismissed the
> action without prejudice pending such clarification, rather than entering judgment
> that finally dismissed the action.

*Id.* at 1250 (quotations omitted). Thus, the Court of Appeals held that "the Court of International

Trade erred by holding that it lacked jurisdiction to determine the temporal scope of its ruling in

*Heartland I* and the effect of the [Federal Circuit's] ruling in *Heartland II*." *Id.* at 1253. Having

resolved the jurisdictional issue, the Court of Appeals remanded this case for "further

proceedings on the merits." *Id.* at 1254.

## II. Discussion

*A. Scope of Heartland I*

Plaintiff now claims that because of the extraordinary circumstances necessary to obtain

relief under § 1581(h), any actions by Customs that disturb this court's judgment in *Heartland I*

are unlawful. Pl. Br. 8. Plaintiff argues that a judgment rendered under § 1581(h) supercedes

the statutes that normally govern liquidation; therefore, all entries made pursuant to *Heartland I*

must be liquidated at the non-TRQ rate as a matter of law. Pl. Br. 8-10. On the other hand,

Defendant contends that this court lacks jurisdiction over Heartland's actual entries made after

*Heartland I* because those entries were necessarily speculative and therefore not ripe for review.

Def. Br. 6. Moreover, Defendant asserts that the liquidation statutes provide Customs with a

valid legal basis to liquidate Heartland's entries at the TRQ rate. Def. Br. 21.

Accordingly, this case requires the court to define the practical effect of a judgment

issued pursuant to § 1581(h). Section 1581(h) provides:

The Court of International Trade shall have exclusive jurisdiction of any civil

action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but *only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation*.

§ 1581(h) (emphasis added). As this court previously explained,

section 1581(h) is an extraordinary instrument, and a significant exception to the procedural requirements traditionally placed on those challenging a decision by Customs. Historically, in order to challenge a decision like the [*Revocation Ruling*] at issue in this case, it was necessary for a party to exhaust remedies available through the administrative agency by filing a protest with Customs. Exhaustion in such a case also requires plaintiffs to pay any duties owed on the entries in question before filing with this court. *Section 1581(h) allows for bypassing these procedural and monetary burdens in specific and narrow circumstances, namely, if the importer can demonstrate that it would be irreparably harmed unless given an opportunity to obtain judicial review prior to [an] importation.*

*Heartland III*, 223 F. Supp. 2d at 1324 (cited approvingly in *Heartland V*, 424 F.3d at 1253)

(citations omitted) (emphasis added); *see Fabil Mfg. Co. v. United States*, 237 F.3d 1335, 1340

(Fed. Cir. 2001). This court held in *Heartland III* that its ruling in *Heartland I* applies to all of

the entries contemplated by Plaintiff when it sought review under § 1581(h).

While the jurisdictional predicate for § 1581(h) requires that the entries be prospective, this must be distinguished from the effect of a judicial decision which can only be useful if it is applied to real entries. *The entire rationale for pre-importation review under § 1581(h) is that Customs will be bound to apply the court's decision on the adjudicated ruling to future entries.*

*Heartland III*, 26 CIT at 280, 223 F. Supp. 2d at 1330 (emphasis added); *see Heartland V*, 424

F.3d at 1248. Based on the plain language of the statute and legislative history, Congress clearly

intended to distinguish § 1581(h) from other jurisdictional bases provided under § 1581.[7]  The

purpose of pre-importation review is to alleviate the risk of irreparable harm to importers by

ascertaining duties on their entries *before* the initial importation is made.  *See Heartland III*, 26

CIT at 280, 223 F. Supp. 2d at 1330.

        In this case, applying the holding of *Heartland II* (which re-instated the *Revocation*

*Ruling* that classified Heartland's entries under the TRQ provision) retroactively would

undermine the purpose of pre-importation review.  Heartland satisfied the heightened burden of

proof to establish jurisdiction under § 1581(h) and obtained a favorable ruling.  *See Heartland I*,

23 CIT at 757, 777, 74 F. Supp. 2d at 1329, 1345; *see also* 28 U.S.C. § 2639(b).  It justifiably

relied on this court's judgment in *Heartland I* when it continued to import sugar syrup at the

non-TRQ rate.  Since the Government did not request a stay of judgment pending appeal, the

decision in *Heartland I* took effect on November 18, 1999, 30 days after it was issued.  *See*

§ 1625(c); *see also* USCIT R. 62(d) & (e); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,

897 F.2d 511, 512 (Fed. Cir. 1990) (outlining requirements for granting stay of judgment

pending appeal); *Deering Milliken, Inc. v. Fed. Trade Comm'n*, 647 F.2d 1124, 1129 n.11 (D.C.

Cir. 1978) ("The only consequence of failing to obtain a stay is that the prevailing party may

_____

        [7] In relevant part, the legislative history provides:

        It is not the Committee's intent to permit judicial review prior to the completion
        of the import transaction in such a manner as to negate the traditional method of
        obtaining judicial review of import transactions.  Such review, however, is
        exceptional and is authorized only when the requirements of subsection (h) are
        met.

H.R. Rep. No. 1235, 96th Cong., 2d Sess. 47 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 3729,
3758.

treat the judgment of the district court as final, notwithstanding that an appeal is pending.").
"The law is well settled that the pendency of an appeal has no affect [sic] on the finality or
binding effect of a trial court's holding." *SSIH Equip. S.A. v. ITC*, 718 F.2d 365, 370 (Fed. Cir.
1983). Furthermore, pursuant to Rule 41(c) of the Federal Rules of Appellate Procedure, this
court's decision in *Heartland I* remained effective until the Federal Circuit issued its mandate.
*See* Fed. R. App. P. 41(c); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529 (9th Cir.
1989) (quoting *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988)). After
issuance of the Federal Circuit's mandate, Heartland could no longer rely on *Heartland I*.[8]

As the Federal Circuit recognized, this court has the inherent power to "ensure
compliance with its own prior ruling in *Heartland I*" and "to determine the effect of its
judgments and issue injunctions to protect against attempts to attack or evade those judgments."
*Heartland V*, 424 F.3d at 1251-52 (citing *United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1054
(Fed. Cir. 1996)). In exercising that power, the court holds that Customs must liquidate all of
Heartland's entries made prior to the issuance of the Federal Circuit's mandate at the non-TRQ
rate. Any lesser relief would relegate the court's ruling in *Heartland I* to an advisory opinion
lacking "practical concrete application." *Heartland III*, 26 CIT at 280, 223 F. Supp. 2d at 1331;
Pl. Reply Br. 8.

Defendant cites *International Custom Products, Inc. v. United States*, Slip Op. 05-145,
2005 WL 2980587 (Nov. 8, 2005) (not reported in F. Supp.) ("*ICP*") as contrary authority to the
court's position. Def. Br. 8. It cites as pertinent that the case was dismissed on grounds of

---

[8] Notably, Heartland ceased all imports of sugar syrup the day after the Federal Circuit decided *Heartland II*.

ripeness because the plaintiff requested that the court declare a bond requirement null and void

for all current and *future* entries.  *See ICP*, 2005 WL 2980587, at *4-5.  *ICP*, however, is

inapposite because it is not a § 1581(h) case.  *See id.* at *2.  The heightened burden of having to

demonstrate irreparable harm under § 1581(h) provides grounds for jurisdiction over disputes

that might otherwise be considered speculative or not ripe for review.  It is precisely this

distinction that makes jurisdiction under § 1581(h) extraordinary.  *See St. Paul Fire & Marine*

*Ins. Co. v. United States*, 6 F.3d 763, 768-69 (Fed. Cir. 1993); H.R. Rep. No. 1235, 96th Cong.,

2d Sess. 47, *as reprinted in* 1980 U.S.C.C.A.N. 3729, 3770.

        In addition, Defendant claims that the statutes and regulations that normally govern

liquidation divest the court of authority to require that Customs liquidate the subject entries at

the non-TRQ rate.  Def. Br. 21-26.  For example, the Government relies on 19 C.F.R.

§ 152.16(a)[9] to argue that Heartland's entries are subject to the TRQ.  Def. Br. 20-23.  However,

§ 152.16(a) was promulgated in 1975 in the light of the then exclusive post-importation protest

jurisdiction, now codified in 28 U.S.C. § 1581(a).  As § 1581(h) was enacted in 1980,

_____

        [9] In relevant part, § 152.16(a) provides:

        The following procedures apply to changes in classification made by decision of
        either the United States Court of International Trade or the United States Court of
        Appeals for the Federal Circuit, except to the extent otherwise provided in a
        ruling published in the Customs Bulletin pursuant to § 177.10(a) of this chapter:

        (a) Identical merchandise under decision favorable to Government. The principles
        of any court decision favorable to the Government shall be applied to all
        merchandise identical with that passed on by the court which is covered by
        unliquidated entries, whether for consumption or warehouse.

§ 152.16(a).

§ 152.16(a) does not address it.  Likewise, the enactment of 19 U.S.C. § 1504[10] also preceded

that of § 1581(h), and there is no reason to believe that its general language was meant to deprive

§ 1581(h) of its specific force.  *See* § 1504; *see also Fakhri v. United States*, Slip Op. 07-126,

2007 WL 2481512, at *3 (Aug. 20, 2007) ("Section 1504 was originally enacted in 1978 to

impose a four-year time limit for liquidation, with the motivation being to increase certainty in

the customs process for importers . . . .") (quotations & citations omitted).  More importantly,

§§ 1504(b) and 152.16(a) do not operate as a limitation on the court's authority, but rather as a

limitation on Customs' authority.[11]  *See* §§ 1504(b) & 152.16(a).

To repeat, because "[s]ection 1581(h) is an extraordinary instrument, and a significant

exception to the procedural requirements traditionally placed on those challenging a decision by

Customs," the court rejects Defendant's argument.  *Heartland III*, 28 CIT at __, 341 F. Supp. 2d

at 1324.  For § 1581(h) to have any practical usefulness for importers who validly seek and

---

[10] In pertinent part, § 1504(b) reads:

(b) Extension
The Secretary of the Treasury may extend the period in which to liquidate an entry if--
(1) the information needed for the proper appraisement or classification of the imported
or withdrawn merchandise, . . . or for ensuring compliance with applicable law, is not
available to the Customs Service . . . .

§ 1504(b) (1978).

[11] In Defendant's Motion for Judgment on the Agency Record, the Government states
that Customs "reliquidated some of Heartland's entries in the TRQ provision, and extended the
liquidation of those entries which were not yet liquidated" following "the Federal Circuit's
decision on August 30, 2001."  Def. Mot. J. Agency R. Statement Undisputed Material Facts 3.
As this court's holding makes clear, Customs did not have authority to extend liquidation
pursuant to § 1504(b) nor reliquidate Heartland's entries made in reliance of *Heartland I* and
before issuance of the Federal Circuit's mandate.

receive its benefits, it cannot be interpreted as restrictively as Defendant urges.  It is clear from

the legislative history that Congress was aware § 1581(h) represented a significant change at the

time it was enacted and intended it to be of benefit to the importing community.  *See* H.R. Rep.

No. 1235, 96th Cong., 2d Sess. 47, *as reprinted in* 1980 U.S.C.C.A.N. 3729, 3758; *Heartland V*,

424 F.3d at 1252, 1253.  Accordingly, an importer must be able to rely on a favorable judgment

issued pursuant to § 1581(h), otherwise the judgment is effectively toothless.  Therefore, this

court's judgment in *Heartland I*, which was not stayed, is not obviated by the statutes and

regulations cited by Defendant that govern the liquidation process in contexts other than that

found here in which the entries are subject to a judgment issued pursuant to § 1581(h).

*B. Injunctive Relief*

Defendant next argues that the court may not grant the relief Heartland requests because

any such relief would be injunctive and, thus, prohibited by the terms of 28 U.S.C. § 2643(c)(4).

Def. Br. 12-13; *see* § 2643(c)(4).  Defendant is correct that in an initial action for adjudication

under § 1581(h) injunctive relief is not available.  *See id.*  Here, however, we are presented with

an entirely different matter.  After eight years and five separate court proceedings, Heartland

seeks the court's determination on how its entries should be treated in view of the favorable

judgment it originally received under § 1581(h).  This proceeding, therefore, is not part of a pre-

importation action under § 1581(h).  Rather, "[s]uch an inquiry falls squarely within the court's

inherent power to determine the effect of its prior judgments." *Heartland V*, 424 F.3d at 1251.[12]

---

[12] Although the relevant statutory provisions may at first appear confusing, Def. Reply Br. 6, the court believes that the Federal Circuit has settled the issue of injunctive relief in the context of a litigant seeking to enforce his rights under a prior judgment.

As the Federal Circuit recognized, the Supreme Court has "reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Id*. at 1251 (quoting *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)).

Although § 2643(c)(4) states that in "any civil action described in section 1581(h)" the Court "may only order the appropriate declaratory relief,[13]" the Federal Circuit correctly recognized that "pre-importation challenges to Customs' rulings in essence seek injunctive relief[14]. . . ." *Fabil Mfg. Co.*, 237 F.3d at 1340 (quoting *St. Paul Fire & Marine Ins. Co.*, 6 F.3d at 768-69). Despite the fact that *Heartland I* provided only declaratory relief, Customs was bound by that judgment to liquidate Heartland's prospective entries of sugar syrup at 1702.90.40 HTSUS, as stated in the judgment. *See Heartland I*, 23 CIT at 777, 74 F. Supp. 2d at 1345; Def. Br. 13. Because Customs did not respect Plaintiff's rights as established under the *Heartland I* judgment, the court may invoke ancillary jurisdiction over the matter to "determine the effect of its [prior] judgments," which includes the authority to "issue injunctions to protect against attempts to attack or evade those judgments." *Heartland V*, 424 F.3d at 1251. This inherent authority is independent of that under § 1581(h) and, therefore, not limited by § 2643(c)(4). *See id*. at 1253.

---

[13] Declaratory relief is defined as "[a] binding adjudication of the rights and status of litigants even though no consequential relief in awarded." Black's Law Dictionary 409 (6th ed. 1990).

[14] Injunction is defined as "[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury." Black's Law Dictionary 784 (6th ed. 1990).

### III. Conclusion

For the reasons stated herein, Plaintiff's motion for summary judgment is GRANTED.


Dated: <u>October 30, 2007</u>                                    <u>/s/Judith M. Barzilay</u>
      New York, NY                                         Judith M. Barzilay, Judge

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

HEARTLAND BY-PRODUCTS, INC.,

       Plaintiff,

      v.

UNITED STATES,

       Defendant.

_____

:
:
:
:
:
:
:
:
:
:
:
:

Before: Judith M. Barzilay, Judge

Court No.  03-00307


<u>JUDGMENT</u>

     This case having been duly submitted for decision, and the court, reading all briefs

submitted and after due deliberation, having rendered a decision herein;

     Now, in conformity with said decision, it is hereby

     ORDERED that Plaintiff's motion for summary judgment is GRANTED.


Dated: <u>October 30, 2007</u>          <u>/s/ Judith M. Barzilay</u>
       New York, NY                  Judith M. Barzilay, Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____          By: _____
                                                          Deputy Clerk